O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EDWARD FLORES,                        )   NO. CV 12-01927-MAN
                                      )
                  Plaintiff,          )
                                      )   MEMORANDUM OPINION
        v.                            )
                                      )   AND ORDER
CAROLYN W. COLVIN,[1]                 )
Acting Commissioner of Social         )
Security,                             )
                                      )
                  Defendant.          )
_____ )

    Plaintiff filed a Complaint on March 14, 2012, seeking review of
the denial of plaintiff's application for a period of disability,
disability insurance benefits ("DIB"), and supplemental security income
("SSI").  On April 24, 2012, the parties consented, pursuant to 28
U.S.C. § 636(c), to proceed before the undersigned United States
Magistrate Judge.  The parties filed a Joint Stipulation on January 2,
2013, in which:  plaintiff seeks an order reversing the Commissioner's

_____

    [1]    Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on March 10, 2009, and an application for a period of disability and DIB on March 23, 2009. (Administrative Record ("A.R.") 15.)  Plaintiff, who was born on April 22, 1956,[2] claims to have been disabled since May 5, 2007 (A.R. 17), due to depression, high blood pressure, diabetes, and back and neck problems (A.R. 53).  Plaintiff has past relevant work experience as a trailer truck driver and forklift operator.  (A.R. 22.)

After the Commissioner denied plaintiff's claims initially (A.R. 53-57), plaintiff requested a hearing (A.R. 59-60).  On August 23, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge John C. Tobin (the "ALJ").  (A.R. 28-48.)  Vocational expert E. Kurata also testified.  (*Id.*)  On September 2, 2010, the ALJ denied plaintiff's claim (A.R. 15-24), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4).  That decision is now at issue in this action.

---

[2]     On the alleged onset date, plaintiff was 51 years old, which is defined as an individual closely approaching advanced age.  (A.R. 22; citing 20 C.F.R. §§ 404.1563, 416.963.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012, and has not engaged in substantial gainful activity since May 5, 2007, the alleged onset date of his disability.  (A.R. 17.)  The ALJ determined that plaintiff has the severe impairments of neck and back disorder, diabetes, and high blood pressure.[3]  (*Id.*)  The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (A.R. 19.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff must] have the opportunity to change position every
> half hour and sit/stand/walk for 4 hours in an 8 hour period;
> occasionally stoop, kneel, crouch, or crawl; occasional
> cervical rotation, flexion, and extension.  As a result of
> pain, [plaintiff] is limited in attention and concentration
> that waxes and waynes [sic] from mild to fully moderate with
> two factors such as the severity of the pain and severity of

---

[3]     The ALJ also determined that plaintiff's depression is "nonsevere," because it "does not cause more than minimal limitation in [plaintiff]'s ability to perform basic mental work activities . . . ." (A.R. 17.)

the side effects from the treatment of pain. As such, [plaintiff] is able to perform simple, repetitive tasks and work with occasional public contact and solitary, not teamwork type environments.

(A.R. 19.)

The ALJ found that plaintiff is unable to perform any past relevant work. (A.R. 22.) However, based upon his RFC assessment for plaintiff and after having considered plaintiff's age, education,[4] work experience, and the testimony of the vocational expert, the ALJ found "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including that of "inspector/hand packager," "shoe packer," and "assembler." (A.R. 23.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from May 5, 2007, through the date of the ALJ's decision. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than

---

[4]    The ALJ found that plaintiff has limited education and is able to communicate in English. (A.R. 22.)

a mere scintilla but not necessarily a preponderance." <u>Connett v.</u>
<u>Barnhart</u>, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the
record can constitute substantial evidence, only those 'reasonably drawn
from the record' will suffice." <u>Widmark v. Barnhart</u>, 454 F.3d 1063,
1066 (9th Cir. 2006)(citation omitted).

    Although this Court cannot substitute its discretion for that of
the Commissioner, the Court nonetheless must review the record as a
whole, "weighing both the evidence that supports and the evidence that
detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of</u>
<u>Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
<u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
responsible for determining credibility, resolving conflicts in medical
testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
1035, 1039 (9th Cir. 1995).

    The Court will uphold the Commissioner's decision when the evidence
is susceptible to more than one rational interpretation.  <u>Burch v.</u>
<u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may
review only the reasons stated by the ALJ in his decision "and may not
affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d
at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse
the Commissioner's decision if it is based on harmless error, which
exists only when it is "clear from the record that an ALJ's error was
'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>
<u>v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v.</u>
<u>Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d
at 679.

**DISCUSSION**

Plaintiff claims the ALJ erred by not considering properly: (1) the opinion of plaintiff's treating physician; and (2) plaintiff's subjective symptom testimony. (Joint Stipulation ("Joint Stip.") at 3-6, 9-17, 19-21.)

**I.   The ALJ Failed To Set Forth Appropriate Reasons For Rejecting The Opinion Of Plaintiff's Treating Physician And Needs To Reassess Plaintiff's RFC On Remand.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial

6

evidence in the record.  *Id.*

In a June 25, 2008 Permanent and Stationary Report, plaintiff's treating physician, Khalid B. Ahmed, M.D., an orthopedic surgeon, diagnosed plaintiff with:  (1) chronic pain syndrome secondary to cervical spine sprain/strain and disk lesion with radiculitis/radiculopathy; (2) thoracic spine sprain/strain and disk lesion with radiculopathy; (3) lumbar spine sprain/strain and disk lesion with radiculopathy; (4) anxiety and depressive illness related to chronic pain and trauma; (5) intermittent insomnia related to depressive illness and pain; and (6) diabetes type 2, which is under control.  (A.R. 299-300.)  Dr. Ahmed found that plaintiff's cervical spine discomfort is "best described as constant, slight, intermittent, moderate-to-severe, reaching moderate-to-severe level with repetitive use of the neck for 15 minutes to 20 minutes."  (A.R. 300.)  With respect to plaintiff's thoracic spine pain, Dr. Ahmed described it as "constant, slight to moderate, intermittent, moderate-to-severe, reaching moderate-to-severe level with any attempts in bending, stooping, or lifting."  (*Id.*)  Plaintiff's lumbar spine discomfort was described as "constant, slight-to moderate, intermittent, moderate-to-severe, reaching moderate-to-severe level with 30 minutes to 35 minutes of standing, 30 minutes to 35 minutes of walking, 30 minutes to 35 minutes of sitting and any attempts in bending, stooping, or lifting."  (A.R. 301.)  Lastly, Dr. Ahmed noted that plaintiff's status was permanent and stationary "with . . . permanent partial disability from this point onwards."  (A.R. 300.)

In his decision, the ALJ gives "little weight" to the opinions of

the consultative examiner and the medical consultant, who opined that plaintiff could perform "medium work," because, according to the ALJ, "there is evidence which supports more limitations than offered by the [consultative examiner (and medical consultant)]." (A.R. 21.)  In so finding, the ALJ cites, *inter alia*, the June 25, 2008 Report by Dr. Ahmed and notes that Dr. Ahmed found that plaintiff "can use his neck repetitively for 15 to 20 minutes and has constant, slight to moderate, intermittent, moderate to severe, reaching moderate to severe level of discomfort with any attempts in bending, stooping, or lifting" and "is able to stand, walk, and sit for 30 to 35 minutes." (A.R. 22; citations omitted.)  While the ALJ notes that he was not bound by Dr. Ahmed's finding(s) of temporary total disability, the ALJ states that he gave "some weight to [Dr. Ahmed's] standing, walking, sitting, and postural limitations." (*Id.*)

As plaintiff notes, however, while the ALJ's RFC assessment for plaintiff is consistent with Dr. Ahmed's sitting, standing, and walking limitations and "may be consistent" with Dr. Ahmend's neck use limitation, the ALJ's RFC assessment does not appear to be consistent with Dr. Ahmed's opinion that plaintiff would experience moderate-to-severe discomfort with *any* bending, stooping, or lifting.  In other words, because the ALJ found that plaintiff could perform light work, which contemplates lifting up to 20 pounds at a time "with *frequent lifting* or carrying of objects weighing up to 10 pounds," 20 C.F.R. §§ 404.1567(b) and 416.9679(b)(emphasis added), and the ALJ found that plaintiff could occasionally stoop (A.R. 19), the ALJ's RFC assessment appears to be at odds with Dr. Ahmed's opinion.  While the ALJ need not accept the full extent of Dr. Ahmed's opinion, the ALJ may not reject

it, or significant parts of it, without giving specific and legitimate reasons for so doing.  The ALJ's failure to proffer any reason,[5] let alone an appropriate reason, for rejecting Dr. Ahmed's opinion constitutes reversible error.[6]

**II.   The ALJ Gave Clear And Convincing Reasons For Finding Plaintiff's Subjective Symptom Testimony To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the

---

[5]   Although not entirely clear, to the extent the ALJ rejects Dr. Ahmed's opinion because he also rendered an opinion on the matter of ultimate disability, the ALJ's reasoning is misguided.  While it is true that a treating physician's opinion on the matter of ultimate disability is not determinative or entitled to special weight, "a treating physician's *medical* opinions are generally [entitled to] more weight." Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)(citing 20 C.F.R. § 404.1527(d)(2)).  A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'"  *Id.* (citing 20 C.F.R. § 404.1527(a)(2)).  Here, beyond finding that plaintiff was temporarily disabled and/or unable to work, Dr. Ahmed diagnosed plaintiff with various impairments and found that plaintiff had resulting limitations and restrictions, as noted in detail *supra*.  Thus, the ALJ's apparent rejection of Dr. Ahmed's opinion on the ground that it also contained an opinion regarding the ultimate issue of disability is not legitimate.  *See* Boardman, 286 Fed. Appx. at 399 (finding that "while [the fact that the treating physician expressed an opinion regarding Boardman's ultimate disability and residual functional] may be a specific reason to reject a treating physician's medical opinion, it is not a legitimate one").

[6]   Although the Commissioner now offers other reasons to explain the ALJ's rejection of the opinion of Dr. Ahmed, the Court cannot entertain these post hoc rationalizations.  *See, e.g.,* Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely").

severity of the symptoms must be considered.  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  <u>Robbins</u>, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

     An ALJ may rely on a claimant's daily activities to support an adverse credibility determination when those activities: (1) "contradict [claimant's] other testimony"; or (2) "meet the threshold for transferable work skills."  <u>Orn</u>, 495 F.3d at 639.  Thus, plaintiff's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  A claimant, however, need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to

1  periodically rest or take medication."  Fair v. Bowen, 885 F.2d 597, 603

2  (9th Cir. 1989)(internal citations omitted).

3

4       In a functional report dated April 6, 2009, plaintiff reported that

5  he:  walks for 15-20 minutes a day; drives to the store to shop for

6  groceries; makes dinner; cleans up after himself; "sometimes" picks up

7  his children and grandson from school and watches them; and performs

8  light household chores, including washing the dishes, doing the laundry,

9  ironing, and sweeping the kitchen.  (A.R. 155, 157.)  Plaintiff also

10 stated that he watches televisions, reads, naps, and goes for walks

11 after dinner.  (A.R. 155.)  Plaintiff reported that he goes outside

12 three to four times a day and travels either by foot or car.  (A.R.

13 158.)  He also reported that when he goes to the stores for groceries,

14 it takes him five minutes to half an hour to shop.  (*Id.*)  Additionally,

15 plaintiff reported that he can pay bills, handle a savings account,

16 count change, and use a checkbook/money orders.  (*Id.*)  Plaintiff

17 indicated that his illness, injuries, or conditions affect his ability

18 to:  lift, walk, climb stairs, squat, bend, stand, sit, kneel,

19 concentrate, remember, and get along with others.  (A.R.

20 160.)  Plaintiff also reported that he can only pay attention for five

21 to ten minutes.  (*Id.*)

22

23      At the August 23, 2010 hearing, plaintiff testified that he:  can

24 sit for 10-15 minutes at a time; stand for 20 minutes at a time; and

25 drives once or twice a month.  (A.R. 38.) Plaintiff also testified that

26 he is able to perform household chores, including light sweeping and

27 taking out the trash.  (A.R. 39.)

28

11

As noted *supra*, the ALJ found that plaintiff has the severe impairments of "neck and back disorder[s], diabetes, and high blood pressure." (A.R. 17.) The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 20.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for discrediting plaintiff's subjective complaints must be clear and convincing.

The ALJ found that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (A.R. 20.) Specifically, the ALJ found plaintiff to be not credible, because: (1) "[plaintiff] reported that he was in a lot of pain during the hearing, . . . [but plaintiff] admitted that he did not take his medication that morning"; (2) plaintiff's described daily activities "are not limited to the extent one would expect, given [plaintiff]'s complaints of disabling symptoms and limitations"; and (3) "[plaintiff]'s subjective complaints and alleged limitations are out of proportion to the objective clinical findings and observed functional restrictions." (*Id.*)

The ALJ's first reason for finding plaintiff to be not credible is unavailing. As the ALJ properly notes, plaintiff testified that, notwithstanding his pain, he did not take his medications the morning of the administrative hearing. (A.R. 35.) Before plaintiff could explain why he did not take his medications, however, it appears that he was cut off and/or interrupted by the ALJ. (*Id.*) Shortly thereafter, plaintiff

explained that his medications cause him to have memory problems and feel drowsy and nauseous. (*Id.*)  Upon hearing plaintiff's side effects, the ALJ appeared to acknowledge the fact that plaintiff's drowsiness could interfere with the hearing.  (A.R. 36, noting that "so if there's drowsiness it would interrupt, interfere with the hearing.")  While an ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to  follow a prescribed course of treatment" in assessing a claimant's credibility, Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008), in this case, plaintiff provided a legitimate reason for choosing not to take his medication -- *to wit*, that it would cause him to feel drowsy during the hearing.  Accordingly, the ALJ's reasoning cannot constitute a clear and convincing reason for finding plaintiff to be not credible.

The ALJ's second reason for discrediting plaintiff -- *to wit*, that plaintiff's described daily activities "are not limited to the extent one would expect, given [plaintiff]'s complaints of disabling symptoms and limitations" -- is, however, a clear and convincing reason for finding plaintiff to be not credible.  As the ALJ notes in his decision, plaintiff reported that he "does light sweeping," "takes out the kitchen trash," "drive[s]," "picks up his children from school," "takes care of his children," "clean[s] up after himself," "prepares his own meals on a daily basis, performs household chores such as laundry, light cleaning, ironing, and sweeping the kitchen, and shops in stores for food and household items."  (A.R. 20; internal citations omitted.)  In addition, the ALJ noted that plaintiff is able to:  "pay bills, count change, handle a savings account, and use a checkbook/money order"; and "watch[] television with no indication that he has difficulty following

13

a television program." (*Id.*) Plaintiff's daily activities go beyond what would be expected of an individual who, like plaintiff, claims to be in so much pain as to be unable, for example, to concentrate for more than five minutes. *See* Light v. SSA, 119 F.3d 789, 793 (9th Cir. 1997)(stating that an ALJ may disbelieve a claimant if there are inconsistencies between the claimant's testimony about his daily activities and his testimony about the nature, effect, or severity of his symptoms); Fair, 885 F.2d at 603 (noting that "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"). As such, the ALJ properly considered plaintiff's daily activities as a factor in assessing plaintiff's credibility.

Lastly, the ALJ properly considered the lack of objective evidence and objective functional restrictions as a factor in assessing plaintiff's credibility. For example, citing the consultative examiner's May 30, 2009 report, the ALJ noted that, although plaintiff had some tenderness in his lower lumbar region, his physical examination was generally normal. (A.R. 21.) The consultative examiner found that plaintiff had a negative straight leg raise test at 90 degrees, 5/5 strength in all extremities, and that plaintiff's "sensory was grossly intact and symmetrical to light touch." (*Id.*; citations omitted.) In addition, the ALJ noted that "[t]here [wa]s no evidence of severe disuse muscle atrophy that would be compatible with [plaintiff]'s alleged inactivity and inability to function." (A.R. 20.) Further, no physician found plaintiff to be as functionally limited as he claimed.

While the failure of the medical record to corroborate a claimant's subjective symptom testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony, it is a factor that the ALJ may take into account when making a credibility determination. *See* Burch, 400 F.3d at 691; Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).   Thus, the ALJ properly considered the lack of evidence supporting plaintiff's subjective complaints and alleged limitations as a factor in assessing his credibility.

Accordingly, because the ALJ provided clear and convincing reasons for finding plaintiff's testimony to be not credible, no reversible error was committed.

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.* at 1179-81.

15

1    Remand is the appropriate remedy to allow the ALJ the opportunity

2  to remedy the above-mentioned deficiency and error.[7]  On remand, the ALJ

3  must credit Dr. Ahmed's opinion or provide appropriate reasons supported

4  by substantial evidence for rejecting it.  After doing so, the ALJ may

5  need to reassess plaintiff's RFC, in which case additional testimony

6  from a vocational expert likely will be needed to determine what work,

7  if any, plaintiff can perform.

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18

19  _____

20      [7]    Plaintiff has requested that this Court award benefits under
   Smolen, *supra*, because:  "(1) the ALJ . . . failed to provide legally
21  sufficient reasons for rejecting the [opinion of Dr. Ahmed]; (2) there
   are no outstanding issues that must be resolved before a determination
22  of disability can be made; and (3) it is clear from the record that the
   ALJ would be required to find the claimant disabled were such evidence
23  credited."  (Joint Stip. at 5.)  It is well established that the court
   "may direct an award of benefits where the record has been fully
24  developed and where further proceedings would serve no useful purpose."
   Smolen, 80 F.3d at 1292.  In this case, however, it is not apparent to
25  the Court whether Dr. Ahmed's opinion, particularly his opinion
   regarding plaintiff's bending, stooping, and lifting limitations, would
26  require a finding of disability.  As plaintiff properly notes, light
   work -- the type of work the ALJ found plaintiff capable of performing
27  -- *typically* involves occasional bending and stooping.  (Joint Stip. at
   5.)  However, it is unclear to the Court whether *all* light work involves
28  such limitations.  Accordingly, because further proceedings would serve
   a useful purpose, the Court declines to award benefits at this time.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED, in part, and REVERSED, in part, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   May 3, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

17